UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Phillip Sheridan Danielson,

    Plaintiff,

v.

Experian Information Solutions Inc.;
Equifax, Inc. d/b/a Equifax Information
Services, Inc.; Trans Union LLC; CSC
Credit Services Inc.; and Aurora Loan
Services, Inc.,

    Defendants.

ORDER
Civ. No. 03-2820 (JNE/JSM)

---

Thomas J. Lyons, Jr., Esq., Consumer Justice Center, appeared for Plaintiff Phillip Sheridan Danielson.

Scott M. Lucas, Esq., Thomas B. Olson & Associates, P.A., appeared for Defendant Aurora Loan Services, Inc.

---

This is an action by a consumer—Phillip Danielson (Mr. Danielson)—against his mortgagee—Aurora Loan Services, Inc. (Aurora)—and several credit reporting agencies—Experian Information Solutions Inc. (Experian), Equifax, Inc., Trans Union LLC, and CSC Credit Services Inc. (CSC) (collectively, CRAs). He settled his claims against the CRAs.[1] He asserts a claim against Aurora under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681u (2000). He also asserts claims against Aurora under state law for credit defamation, invasion of privacy, interference with credit expectancy, and negligence. The case is before the Court on Aurora's Motion for Summary Judgment and Mr. Danielson's Motion for Partial

---

[1] Pursuant to stipulations, the Court dismissed Mr. Danielson's claims against Experian, Trans Union, and CSC. In his memorandum in support of his motion for partial summary judgment, Mr. Danielson states that he settled with all defendants except Aurora. Accordingly, the Court dismisses the claims against Equifax.

1

Summary Judgment on FCRA Liability and Willfulness. For the reasons set forth below, the Court grants Aurora's motion and denies Mr. Danielson's motion.

## I. BACKGROUND

In February 1994, Mr. Danielson and his wife, Elizabeth Danielson (Mrs. Danielson), executed a mortgage note and mortgage deed in favor of Freedom Mortgage Corporation. Mrs. Danielson was the "secondary borrower." Later, the Danielsons' mortgage was assigned to Aurora. In October 2001, Mrs. Danielson petitioned for Chapter 13 bankruptcy. Aurora appeared in the petition's schedule of creditors holding secured claims and the schedule of codebtor's creditors. Mrs. Danielson also filed a Chapter 13 plan in October 2001. The plan listed the obligation to Aurora as a "long-term secured claim[] not in default," indicated that payments to Aurora were current, and stated that Mrs. Danielson intended to make payments directly to Aurora. Under the plan, Aurora would retain its lien. In November 2001, Aurora received notice of Mrs. Danielson's Chapter 13 bankruptcy case.

Aurora submits monthly reports about its clients to the CRAs. As of October 2001, Aurora reported the Danielsons' account in good standing. After receiving notice of Mrs. Danielson's Chapter 13 bankruptcy case, Aurora changed its monthly report for the Danielsons' account. From November 2001 to November 2003, Aurora reported the Danielsons' account as Bankruptcy Chapter 13 and indicated that the secondary borrower was in bankruptcy.

After Aurora changed its monthly report for the Danielsons' account, the CRAs received disputes from Mrs. Danielson about their reporting of the Aurora account on Mr. Danielson's credit report. Mrs. Danielson also contacted Aurora directly. The Court summarizes these events below.

**A.     CSC/Equifax[2]**

As of March 29, 2002, CSC listed Aurora's account on Mr. Danielson's credit report as "included in bankruptcy of secondary borrower" and "involved in chapter 13 debt adj." By letter dated July 2, 2002, Mrs. Danielson submitted the following request to Equifax:

> I am requesting that when credit information is provided to any company seeking information about my husband ONLY, it is clearly noted that the Chapter 13 was filed in my name only, not jointly with my husband. I understand that since our mortgages are a joint venture, this information needs to be provided, however, I would appreciate complete information be indicated. The fact that my husband did not file Chapter 13 should be conveyed.

An Automated Consumer Dispute Verification form (ACDV)[3] dated July 15, 2002, reveals that Equifax submitted the following verification request to Aurora with regard to Mr. Danielson's credit report: "Subscriber comment/remarks message disputed. Not in bankruptcy—requests message deletion." The ACDV contains Aurora's response: "Please report secondary borrower filed bankruptcy solely." As of July 25, 2002, CSC listed Aurora's account on Mr. Danielson's credit report as follows: "Account included in bankruptcy of secondary borrower."

By letter of August 20, 2002, Mrs. Danielson informed CSC that the information provided by Aurora was incorrect. Specifically, she stated: "[Aurora's] statement of 'account included in bankruptcy of secondary borrower' is not entirely correct. This debt was NOT included in the Chapter 13 Bankruptcy and [Aurora is] not included in the repayment plan established, that is for unsecured debts only." The record does not contain an ACDV for this

---

[2]     According to Mr. Danielson, Equifax is affiliated with CSC. He does not distinguish CSC from Equifax in his factual recitation. Nor does Aurora. Accordingly, the Court considers them together.

[3]     Upon receiving a dispute from a consumer, a credit reporting agency notifies the information furnisher of the dispute in a Consumer Dispute Verification form or ACDV. A completed ACDV contains the credit reporting agency's request for verification and the information furnisher's response.

3

dispute. By letter dated September 5, 2002, CSC informed Mr. Danielson of the results of its investigation. Specifically, CSC stated that the Aurora account "is currently not reporting in bankruptcy." CSC also removed the information to which Mrs. Danielson had objected from Mr. Danielson's credit report.

In early 2003, the Danielsons again disputed the reporting of the Aurora account on Mr. Danielson's credit report. An ACDV dated February 5, 2003, contains the following verification request from CSC: "Subscriber comments/remarks message disputed." On narrative lines, the ACDV also states that the Aurora account was "included in bankruptcy of secondary borrower" and that it was "involved in chapter 13 debt adj." Aurora responded: "Please report active chapter 13 bankruptcy account current." By letter dated March 17, 2003, CSC informed Mr. Danielson that it had deleted the Aurora account from his credit report.

**B.    Experian**

By letter dated July 2, 2002, Mrs. Danielson submitted the same request to Experian that she had submitted to CSC/Equifax. The record does not contain an ACDV for this dispute. After investigation, Experian reported the Aurora account on Mr. Danielson's credit report as follows:

> Status: Discharged through Bankruptcy Chapter 13/Never late.
>
> Account history: Debt included in Chapter 13 Bankruptcy 11/06/2001 to 07/06/2002
>
> The account is scheduled to continue on record until 10-2008.
>
> Creditor's statement: *"Secondary borrower filed bankruptcy."*

By letter of August 20, 2002, Mrs. Danielson disputed Experian's reporting of the Aurora account on Mr. Danielson's credit report. Specifically, she stated:

4

> The report indicates: **Status: discharged through Bankruptcy Chapter 13/Never late.** This debt was NOT included in the Chapter 13 Bankruptcy, as that is for unsecured debts only and payments to [Aurora] are not included in the Chapter 13 repayment plan. The Never late statement is a true statement . . . .

An ACDV dated September 5, 2002, contains the following verification request from Experian to Aurora: "disputes present/prev status/mop rating/paymnt patter.  pls verify all curr/prev paymnt history."  Aurora responded: "debt included in bankruptcy chapter 13." A credit report dated September 6, 2002, indicates that Experian reported the Aurora account on Mr. Danielson's credit report as follows:

> Status:  Discharged through Bankruptcy Chapter 13/Never late.
>
> Account history:   Debt included in Chapter 13 Bankruptcy 11/06/2001 to 08/06/2002
>
> The account is scheduled to continue on record until 10-2008.
>
> Creditor's statement:  "*Secondary borrower filed bankruptcy.*"
>
> This item was verified on 7-2002 and remained unchanged.

After another dispute arose in early 2003, Experian reported the Aurora account on Mr. Danielson's credit report as follows:

> Status:  Open/Never late.
>
> This item was verified and updated on 2-2003.

**C.     Trans Union**

As of March 28, 2002, Trans Union listed the Aurora account on Mr. Danielson's credit report as "included in bankruptcy" and "status as of 11/2001: wage earner or similar plan."  By letter dated July 2, 2002, Mrs. Danielson submitted the same request to Trans Union that she had submitted to CSC/Equifax and Experian.  An ACDV dated July 19, 2002, indicates that Trans Union sent the following verification request to Aurora:  "bankruptcy not his, verify consumer

5

liability." Aurora responded: "please update secondary borrower filed bankruptcy solely." As of July 26, 2002, Trans Union reported the Aurora account on Mr. Danielson's credit report as "included in bankruptcy" and "sbbsecobndary borrowe bkrpy." By letter of August 20, 2002, Mrs. Danielson disputed the information about the Aurora account on Mr. Danielson's credit report. The letter provides in part: "This debt was not included in the Chapter 13 bankruptcy, as that is for unsecured debts only. [Aurora's] further statement of 'wage earner or similar plan' is also incorrect." An ACDV dated September 17, 2002, reveals that Trans Union sent the following verification request to Aurora: "never included in wep." It indicates that Aurora responded: "please update this account is a ch 13 bankruptcy." As of September 24, 2002, Trans Union reported Aurora's account on Mr. Danielson's credit report as follows: "chapter 13 bankruptcy," "sbbsecobndary borrowe bkrpy," and "status as of 9/2002: wage earner of similar plan."

**D.    Aurora**

By letter dated August 21, 2002, the Danielsons informed Aurora of how the CRAs were reporting the Aurora account on Mr. Danielson's credit report. They asked Aurora for a 12-month history of their account and a statement verifying that the Aurora account is not part of the Chapter 13 repayment plan. In a letter dated October 9, 2002, Aurora provided a 12-month account history to the Danielsons. Aurora also stated that it was monitoring the bankruptcy case, that no arrears were included with Aurora's Proof of Claim, and that the Chapter 13 Bankruptcy plan states that payments to Aurora come directly from the Danielsons.

**II.    DISCUSSION**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Mr. Danielson's motion**

Mr. Danielson contends that Aurora violated the FCRA. A negligent failure to comply with the FCRA entitles an aggrieved consumer to actual damages. 15 U.S.C. § 1681o. A willful failure to comply with the FCRA entitles an aggrieved consumer to actual or statutory damages and punitive damages. *Id.* § 1681n. The particular provision of the FCRA that Aurora allegedly violated is 15 U.S.C. § 1681s-2(b), which provides in relevant part:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to

>which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1).[4] The investigation required by section 1681s-2(b)(1) must be reasonable. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004). Mr. Danielson asserts that he is entitled to summary judgment on the issues of whether Aurora failed to comply with section 1681s-2(b)(1) and whether its failure to do so was willful.

Mr. Danielson asserts that Aurora failed to comply with section 1681s-2(b)(1) because it failed to reasonably investigate the disputes from the CRAs. According to Mr. Danielson, Aurora failed to reasonably investigate the disputes because its responses to the CRAs "failed to identify completely and accurately . . . that [he] was not the borrower in bankruptcy and that the [Aurora] account was not included in his or anyone's Chapter 13 plan." He argues that no reasonable factfinder could conclude that Aurora performed a reasonable investigation because the ACDVs indicated that the CRAs were not reporting whether Mr. Danielson was the "secondary borrower," Aurora knew that the omission of that information was the precise basis of his dispute, Mrs. Danielson had contacted Aurora to inform it of the nature of the dispute, and Aurora's responses on the ACDVs failed to indicate that Mr. Danielson was not the secondary borrower. Mr. Danielson's arguments reveal that his FCRA claim is one that challenges the accuracy and completeness of the information provided by Aurora to the CRAs. The FCRA imposes a duty on those who furnish information to a consumer reporting agency to provide complete and accurate information. 15 U.S.C. § 1681s-2(a). Unfortunately for Mr. Danielson, the FCRA provides that section 1681s-2(a) "shall be enforced exclusively" by federal and state

---

[4] After Mr. Danielson commenced this action, section 1681s-2(b)(1) was amended to add a new provision that imposes additional duties on furnishers of information to credit reporting agencies. *See* Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, sec. 314(b), 117 Stat. 1952, 1995-96. Mr. Danielson's FCRA claim does not depend on that provision.

authorities. 15 U.S.C. § 1681s-2(d). Therefore, Mr. Danielson's FCRA claim must be dismissed. *See id.*; *Johnson*, 357 F.3d at 433.

Assuming that section 1681s-2(d) does not bar Mr. Danielson's FCRA claim, Aurora contends that the record does not support the claim's premise because Aurora identified Mr. Danielson as the primary borrower and Mrs. Danielson as the secondary borrower in its monthly reports to the CRAs before and after the disputes regarding Mr. Danielson's credit report. To support its contention, Aurora relies on Melissa Segura, a Default Reporting Supervisor at Aurora, and Leo Trautman, Jr., Aurora's representative under Federal Rule of Civil Procedure 30(b)(6). Mr. Danielson asserts that neither Segura nor Trautman has personal knowledge of the information sent by Aurora to the CRAs in the monthly reports. According to Segura, Aurora's records of its monthly reports to the CRAs identify Mr. Danielson as the primary borrower and Mrs. Danielson as the secondary borrower. Trautman testified that the records of the monthly reports were a "fair representation" of the information provided to the CRAs. On this record, no genuine issue of material fact exists as to whether Aurora identified Mr. Danielson as the primary borrower and Mrs. Danielson as the secondary borrower in its monthly reports to the CRAs. Aurora's reference to the secondary borrower in its verification responses was a reference to Mrs. Danielson. The record therefore does not support the premise of Mr. Danielson's FCRA claim.

In short, Mr. Danielson is not entitled to summary judgment on the issue of whether Aurora violated section 1681s-2(b)(1). In light of this conclusion, he is not entitled to summary judgment on the issue of whether Aurora's alleged violation was willful. Accordingly, the Court denies Mr. Danielson's motion.

**B.    Aurora's motion**

*1.    FCRA*

Aurora argues that it is entitled to summary judgment on Mr. Danielson's FCRA claim because there is no evidence in the record that it negligently or willfully failed to comply with the requirements imposed by section 1681s-2(b).  In response, Mr. Danielson reiterates the arguments that he raised in support of his motion for partial summary judgment.  For the reasons set forth above, section 1681s-2(d) bars Mr. Danielson's FCRA claim.  Assuming that section 1681s-2(d) does not bar the claim, the record does not support the claim's premise.  Accordingly, the Court grants Aurora's motion insofar as Aurora seeks summary judgment on the FCRA claim.

*2.    State-law claims*

Aurora asserts that it is entitled to summary judgment on Mr. Danielson's claims of defamation, invasion of privacy, and negligence because the FCRA preempts them.  Aurora relies on 15 U.S.C. § 1681h(e),[5] which provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

---

[5]  The FCRA contains another preemption provision, 15 U.S.C. § 1681t(b)(1)(F), that appears to overlap with section 1681h(e).  *See Malm v. Household Bank (SB), N.A.*, Civ. No. 03-4340, 2004 WL 1559370, at *5-6 (D. Minn. July 7, 2004) (summarizing judicial interpretations of the "seemingly overlapping" preemption provisions of the FCRA).  Aurora does not assert that Mr. Danielson's state-law claims are preempted pursuant to 15 U.S.C. § 1681t(b)(1)(F).  In the absence of such an argument, the Court considers only section 1681h(e).

A statement made with knowledge that it was false or with reckless disregard of whether it was false is one that is made with "malice or willful intent to injure" for purposes of section 1681h(e).  *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705 (8th Cir. 1980); *Yutesler v. Sears Roebuck & Co.*, 203 F. Supp. 2d 1209, 1212 (D. Minn. 2003).

Aurora asserts that there is no evidence in the record that it made any reports to the CRAs with knowledge that they were false or with reckless disregard of their veracity.  Mr. Danielson contends that a reasonable jury could conclude that Aurora's reports exhibited a reckless disregard of their truth.  His contention is based on Aurora's alleged failure to specify that the bankruptcy reference on his credit report did not apply to him.  As set forth above, the record reveals that Aurora identified Mr. Danielson as the primary borrower and Mrs. Danielson as the secondary borrower in monthly reports to the CRAs before and after the disputes regarding Mr. Danielson's credit report.  Aurora's reference to the secondary borrower in its verification responses identified Mrs. Danielson as the person who had filed Chapter 13 bankruptcy.  Viewed in the light most favorable to Mr. Danielson, the record reveals that Aurora did not provide false information with malice or willful intent to injure Mr. Danielson.  The Court therefore concludes that Aurora is entitled to summary judgment on his claims of defamation, invasion of privacy, and negligence.  *See* 15 U.S.C. § 1681h(e).

3.   *Interference with credit expectancy*

Although Minnesota does not recognize a cause of action for interference with credit expectancy, this Court has interpreted such a claim as one for interference with economic expectancy.  *Reed v. Experian Info. Solutions, Inc.*, Civ. No. 02-3706, 2004 WL 1368405, at *7 (D. Minn. Apr. 14, 2004); *Mattice v. Equifax, Inc.*, Civ. No. 03-1060, 2003 WL 21391679, at *4 (D. Minn. June 13, 2003).  Here, Aurora allegedly interfered with Mr. Danielson's economic

11

expectancy by failing to specify that the bankruptcy reference on his credit report did not apply to him.  As stated above, the record reveals that Aurora identified Mr. Danielson as the primary borrower in its monthly reports to the CRAs.  Aurora's reference to the secondary borrower in its verification responses was a reference to Mrs. Danielson.  Accordingly, the Court concludes that Aurora is entitled to summary judgment on this claim.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Mr. Danielson's claims against Equifax are DISMISSED.

2. Aurora's Motion for Summary Judgment [No Docket No.] is GRANTED.

3. Mr. Danielson's Motion for Partial Summary Judgment on FCRA Liability and Willfulness [Docket No. 52] is DENIED.

4. Mr. Danielson's Complaint [Docket No. 1] is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 30, 2004

> s/ Joan N. Ericksen
> JOAN N. ERICKSEN
> United States District Judge